MORGAN, LEWIS & BOCKIUS LLP
Daryl S. Landy, Bar No. 136288
daryl.landy@morganlewis.com
Nancy Nguyen, Bar No. 301677
nancy.nguyen@morganlewis.com
600 Anton Boulevard
Suite 1800
Costa Mesa, CA  92626-7653
Tel:   (714) 830-0600
Fax:   (714) 830-0700

Attorneys for Petitioner
J.P. Morgan Securities LLC
*[Additional counsel on next page]*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.P. MORGAN SECURITIES LLC, | Case No.  2:26-cv-06625 |
| Petitioner, | **PETITION TO VACATE ARBITRATION AWARD** |
| v. | |
| BRENT RYAN BODNER, | |
| Respondent. | |

Enu Mainigi*
emainigi@wc.com
Craig D. Singer*
csinger@wc.com
Charles L. McCloud*
lmccloud@wc.com
Edward L. Pickup*
epickup@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029

Jeffrey S. Dunlap*
jdunlap@ubglaw.com
UB GREENSFELDER LLP
1660 West 2nd Street
Suite 1100
Cleveland, OH 44113-1406
Tel: (216) 583-7026

Attorneys for Petitioner
J.P. Morgan Securities LLC
*Pro Hac Vice Applications forthcoming

MORGAN, LEWIS &
BOCKIUS LLP

PETITIONER J.P. MORGAN SECURITIES
LLC'S PETITION TO VACATE
ARBITRATION AWARD

Petitioner J.P. Morgan Securities LLC ("JPMS"), hereby petitions this Court to vacate the arbitration award issued on May 21, 2026, by the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution Services in case number 24-02444.

## INTRODUCTION

1.     JPMorgan Chase Bank, N.A. ("Chase"), terminated one of its financial advisors, Respondent Brent Bodner ("Bodner"), after he was caught using his corporate credit card to fund a Super Bowl party in his Beverly Hills home and passing it off as a client event at a restaurant.

2.     Bodner's actions clearly violated Chase's policies providing that client entertainment expenses must not be excessive and events cannot be at an employee's home—not to mention the basic rule that employees cannot lie on expense reports about the purpose or location of an event.

3.     In compliance with FINRA requirements, Chase's broker-dealer affiliate JPMS accurately disclosed to FINRA on a "Form U-5" that Chase terminated Bodner for violating the company's business hospitality policy with respect to the purpose and location of an entertainment event.

4.     As a legal matter, the business decision to terminate Bodner was unimpeachable.  Bodner was an at-will employee, and Chase was entitled to fire him for any reason, or for no reason at all.  Chase had ample reason to terminate Bodner's employment: by misrepresenting the nature of an expense to access corporate funds, Bodner had abused a position of trust, and he had violated clear corporate policies.

5.     Yet shortly after his termination, Bodner brought three claims against JPMS in FINRA's arbitration forum.  First, he alleged that the stated reasons for termination in the Form U-5 were defamatory; second, he alleged that JPMS (not Chase, his employer) was liable for wrongful termination; and third, he alleged that JPMS had tortiously interfered with his business relationships.

MORGAN, LEWIS &
BOCKIUS LLP

3

PETITIONER J.P. MORGAN SECURITIES
LLC'S PETITION TO VACATE
ARBITRATION AWARD

6. Bodner's claims could not succeed in any tribunal that followed settled New York law, which indisputably applies here, because:

a. New York law affords JPMS absolute immunity from defamation liability for statements made in a Form U-5. JPMS repeatedly presented this settled law to the arbitrators and Bodner never meaningfully disputed it.

b. New York law recognizes no tort cause of action for at-will employees to sue for wrongful termination, and the only respondent in the proceedings (JPMS) was not even Bodner's employer.

c. JPMS could not be liable for tortious interference with Bodner's business because he had no business relationship with the individuals whose assets he managed; Bodner's so-called "clients" were undisputedly Chase's or JPMS's clients.

7. Nevertheless, after a six-day hearing, a three-member panel of FINRA arbitrators concluded that JPMS owed Bodner $4.25 million in damages, and the panel directed that Bodner's Form U-5 be expunged and revised to indicate (falsely) that his termination was "voluntary."

8. The panel gave no explanation for its award. Nor did the panel attempt to explain how it arrived at the damages figure.

9. Bodner did not ask for $4.25 million, and even though his expert witness proposed a menu of damages calculations, none even approximated that number.

10. The Federal Arbitration Act permits this Court to "vacat[e]" an arbitration award where "arbitrators exceeded their powers," 9 U.S.C. § 10(a)(4), including where arbitrators "manifestly disregard[]" applicable law or the award is "completely irrational," *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1283 (9th Cir. 2009).

11. The manifest disregard standard is readily satisfied here because JPMS

expressly drew the panel's attention to unambiguous legal rules that foreclosed Bodner's claims, but the panel nonetheless charged ahead to grant relief that Bodner could never have obtained in a court of law. So too, the panel's damages award was wholly untethered to any evidence or testimony, and its expungement award disregarded FINRA's unambiguous requirement that Forms U-5 be accurate.

12. While the award should be vacated under any standard, this Court should apply more searching review to the FINRA arbitrators' award because JPMS was compelled to litigate in FINRA's lawless forum. JPMS is required to be a member of FINRA and submit to FINRA's rules and regulations as a condition of operating as a securities broker-dealer. And FINRA's rules require that employment disputes like this between FINRA members and "associated person[s]" like Bodner proceed in FINRA arbitration. *See, e.g.*, FINRA Rule 13200(a). But if JPMS is dragged into a forum against its consent and subject to executive enforcement authority, the Due Process Clause requires that an independent Article III court review legal questions *de novo* and factual conclusions for substantial evidence.

13. In sum, the three members of an arbitration panel—with little to no experience in the financial services industry (and one of whom was a realtor, not a lawyer)—substituted their business judgment for Chase's and concluded Bodner should not have been fired. That conclusion has no basis in the applicable, undisputed law, and can only be the product of arbitrators who refused to follow the law.

14. Because the panel's award was in manifest disregard of controlling law and the uncontroverted facts presented at arbitration, this Court should vacate the May 21 award.

## **PARTIES**

15. J.P. Morgan Securities LLC is a Delaware limited liability company with its headquarters at 270 Park Avenue, New York, NY 10017. JPMS offers

investment products and services; it is a FINRA member and an associated broker-dealer of Chase, which primarily offers banking products and services. Both JPMS and Chase are subsidiaries of J.P. Morgan Chase & Co. Chase is not a FINRA member or subject to FINRA jurisdiction.

16.     Brent Ryan Bodner is currently a Managing Director in the Beverly Hills office of Wells Fargo Clearing Services, LLC. Based on Bodner's arbitration testimony, Bodner is domiciled in Los Angeles, California. From 2006 until May 29, 2024, he was employed by Chase.

## JURISDICTION AND VENUE

17.     This court has jurisdiction over this dispute because JPMS is a citizen of Delaware and New York, Bodner is a citizen of California, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1), (c).

18.     Venue is proper in this district because the FAA authorizes the "court in and for the district wherein the award was made" to "vacat[e]" an arbitration "award upon the application of any party to the arbitration … where the arbitrators exceeded their powers," 9 U.S.C. § 10(a)(4), and the site of the arbitration hearing was in Los Angeles, California.

19.     This petition to vacate is timely because notice will "be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The award was filed on May 21, 2026.

## FACTUAL ALLEGATIONS

20.     Broker-dealers like JPMS must become FINRA members to trade in securities. *See* 15 U.S.C. § 78*o*(b)(8).

21.     FINRA's rules require that disputes arising out of the business activities of a member or an associated person be arbitrated in accordance with FINRA's Code of Arbitration Procedure. *See* FINRA Rule 13200.

22.     JPMS is a FINRA member, and Bodner was an associated person

MORGAN, LEWIS &
BOCKIUS LLP

6

PETITIONER J.P. MORGAN SECURITIES
LLC'S PETITION TO VACATE
ARBITRATION AWARD

because he was a FINRA-registered representative. *See* FINRA Rule 1011.

23. Implementing FINRA's rules, Bodner's employment agreement specified that disputes "required to be arbitrated by the FINRA rules shall be resolved by individual … arbitration in accordance with the Code of Arbitration Procedure of the FINRA … and in accordance with applicable law."

24. Bodner filed a statement of claim against JPMS in FINRA's arbitration forum on November 13, 2024, and he signed an agreement submitting to arbitration the same day.

25. JPMS answered Bodner's claims and signed a submission agreement on January 24, 2025.

26. A three-member arbitration panel conducted a hearing on Bodner's claims for six days across March 30, 2026, until April 21, 2026.

27. On May 21, 2026, the panel issued an executed arbitration award ("Award"), signed by all three panel members.

28. The Award contained no reasoning: "the Panel" simply "decided" that JPMS was liable to Bodner in the amount of $4.25 million in compensatory damages; that JPMS was liable for post-judgment interest at a rate of 10% per annum; that JPMS was liable to FINRA for certain fees; and the Reason for Termination section of the Form U-5 that JPMS filed should be changed to read "Voluntary," and the Termination Explanation section should appear blank. *See* Award 2-3.

## **GROUNDS FOR RELIEF**

29. As will be set forth in further detail in JPMS's forthcoming motion to vacate the arbitration award and the memorandum in support, the Award should be vacated because the arbitration panel "exceeded [its] powers" and acted in manifest disregard of the law and facts. 9 U.S.C. § 10(a)(4).

30. This Court may vacate an arbitration award when it is "completely irrational" or exhibits a "manifest disregard" for governing law. *Comedy Club*, 553

MORGAN, LEWIS &
BOCKIUS LLP

7

PETITIONER J.P. MORGAN SECURITIES
LLC'S PETITION TO VACATE
ARBITRATION AWARD

F.3d at 1290 (citation omitted). An award manifestly disregards the law where the "arbitrator recognize[s] the applicable law and then ignore[s] it." *Id.* (cleaned up). Although factual errors are generally insufficient to show manifest disregard, a court may vacate an award where arbitrators ignore "a legally dispositive fact." *VIP Mortg. Inc. v. Gates*, 162 F.4th 1010, 1016 (9th Cir. 2025).

## Defamation Claim

31. An Award based on Bodner's Count I for defamation would be in manifest disregard of controlling law.

32. According to Bodner's employment contract, any disputes arising out of contract activity would be governed by New York law.

33. Under New York law, "[s]tatements made by an employer on a [FINRA] employee termination notice are subject to an absolute privilege in a suit for defamation." *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 368 (2007).

34. JPMS presented the panel with that rule in its statement of answer, opening, and closing statements.

35. Bodner never disputed the applicability of New York law, nor did he ever contest that his claim failed as a matter of law under *Rosenberg*.

## Wrongful Termination Claim

36. An Award based on Bodner's Count II for wrongful termination would be in manifest disregard of controlling law.

37. Bodner was an at-will employee of Chase.

38. "It is well-settled that New York does not recognize a cause of action in tort for wrongful termination of an at-will employee." *Montalvo v. J.P. Morgan Chase & Co.*, 2009 WL 4893939, at *7 (N.Y. Sup. Dec. 18, 2009). New York law does not recognize an exception to this principle in cases where an employee alleges he has been terminated in violation of public policy.

39. JPMS made New York law regarding wrongful termination clear to the

panel from the beginning of the arbitration in its statement of answer and opening statements.

40.    Bodner never meaningfully disputed that under New York law, an at-will employee can be terminated for any reason.

41.    In addition, Bodner's employer was *Chase*, not JPMS.

42.    JPMS repeatedly told the arbitrators—and Bodner directly conceded—that JPMS was not Bodner's employer.

43.    Bodner presented no evidence or legal reason why JPMS could be held liable for wrongful termination based on another corporate entity's conduct.

## Tortious Interference Claim

44.    An Award based on Bodner's Count III for tortious interference would be in manifest disregard of controlling law.

45.    To recover for tortious interference with business relations, Bodner had to prove that he had a business relationship with a third party, that JPMS interfered with that relationship "for a wrongful purpose," and that JPMS's conduct injured the relationship. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015). "Failure to identify specific business entities with which the plaintiff[] had business relationships is fatal to a tortious interference … claim." *Girl Scouts of the U.S. of Am. v. Boy Scouts of Am.*, 597 F. Supp. 3d 581, 605 (S.D.N.Y. 2022) (cleaned up).

46.    JPMS made New York law regarding tortious interference clear to the panel.

47.    Bodner's employment agreement made clear that clients of Chase are not Bodner's clients.

48.    Bodner conceded that clients of Chase are not Bodner's own clients.

49.    Bodner had no future expectation of business with those clients because he *repeatedly* testified that he had *no* intent of leaving Chase.

50.    The panel disregarded these dispositive and uncontested facts regarding

MORGAN, LEWIS &
BOCKIUS LLP

9

Bodner's lack of an independent business relationship with Chase's clients.

51. In sum, JPMS openly and repeatedly explained to the panel why applicable law and uncontroverted facts undermined each of Bodner's three claims, and Bodner made no effective rebuttal. The arbitrators were thus aware of applicable law but nevertheless ignored it, opting instead to impose their own preferred outcome. Bodner cannot be permitted to benefit from such lawlessness, and the FAA instructs this Court to vacate arbitration awards in plain excess of the arbitrator's lawful powers. *See* 9 U.S.C. § 10(a)(4).

## Damages Amount

52. The panel's $4.25 million damages award was also completely irrational and manifestly disregarded controlling law.

53. Compensatory damages must be grounded in the factual record and compensate the claimant for actual injury or make the claimant whole.

54. No party, no witness, and no evidence supported the conclusion that Bodner's damages were $4.25 million. The panel concocted that figure out of whole cloth. Nor did the panel identify on which claim or claims Bodner prevailed that entitled him to damages.

## Expungement Order

55. Finally, the arbitration panel manifestly disregarded FINRA's rules regarding Forms U-5.

56. FINRA's own rules require that member firms file "timely, complete and *accurate*" Forms U-5. FINRA Regulatory Notice 10-39 (Sept. 2010), https://perma.cc/NUX5-WAUG (citing FINRA By-Laws, Art. V, § 3(a)) (emphasis added). The accuracy requirement is critical, because it allows regulators to make informed registration, licensing, and disciplinary decisions. Other FINRA members also use the information from Forms U-5 when making hiring decisions.

MORGAN, LEWIS &
BOCKIUS LLP

10

PETITIONER J.P. MORGAN SECURITIES
LLC'S PETITION TO VACATE
ARBITRATION AWARD

57.    Yet the panel's award recommended modifying Bodner's Form U-5 to falsely state that Bodner voluntarily departed Chase, when all parties agree that he did not.  That manifestly disregards FINRA's own requirements and undermines the animating purpose of Forms U-5.

## PRAYER FOR RELIEF

For the foregoing reasons, JPMS respectfully prays for the following relief:

1.    That the May 21, 2026, arbitration award be vacated; and

2.    That JPMS be awarded such other and further relief as this Court deems appropriate and proper.

Dated:    June 18, 2026    MORGAN, LEWIS & BOCKIUS LLP

By /s/Daryl S. Landy
Daryl S. Landy
Nancy Nguyen
Attorneys for Petitioner
J.P. Morgan Securities LLC

Dated:    June 18, 2026    WILLIAMS & CONNOLLY LLP

By /s/ Enu Mainigi
Enu Mainigi
Craig D. Singer
Charles L. McCloud
Edward L. Pickup
Attorneys for Petitioner
J.P. Morgan Securities LLC

Dated:    June 18, 2026    UB GREENSFELDER LLP

By  /s/Jeffrey S. Dunlap
Jeffrey S. Dunlap
Attorney for Petitioner
J.P. Morgan Securities LLC

MORGAN, LEWIS &
BOCKIUS LLP

11

PETITIONER J.P. MORGAN SECURITIES
LLC'S PETITION TO VACATE
ARBITRATION AWARD

# ATTACHMENT 1

**Award**
**FINRA Dispute Resolution Services**

In the Matter of the Arbitration Between:

Claimant
Brent Ryan Bodner

Case Number: 24-02444

vs.

Respondent
J.P. Morgan Securities, LLC

Hearing Site: Los Angeles, California

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

Nature of the Dispute: Associated Person vs. Member

The evidentiary hearing was conducted partially by videoconference.

## REPRESENTATION OF PARTIES

For Claimant Brent Ryan Bodner: Marc Seldin Rosen, Esq., The Law Offices of Marc Seldin Rosen, LLC, Sparks, Maryland.

For Respondent J.P. Morgan Securities, LLC: Sarah Henderson, Esq. and Jeffrey S. Dunlap, Esq., UB Greensfelder, Cleveland, Ohio.

## CASE INFORMATION

Statement of Claim filed on or about: November 13, 2024.
Claimant signed the Submission Agreement: November 13, 2024.

Statement of Answer filed by Respondent on or about: January 24, 2025
Respondent signed the Submission Agreement: January 24, 2025.

## CASE SUMMARY

In the Statement of Claim, Claimant asserted a claim seeking expungement of the Form U5 filed by Respondent, as a part of registration records maintained by the Central Registration Depository ("CRD"), is defamatory in nature and tends to mislead. Additionally, Claimant asserted the following causes of action: wrongful for cause termination and tortious interference with business relations.

FINRA Dispute Resolution Services
Arbitration No.  24-02444
<u>Award Page 2 of 5</u>

Unless specifically admitted in the Statement of Answer, Respondent denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

## RELIEF REQUESTED

In the Statement of Claim, Claimant requested:

1. Compensatory damages for his lost client relationships due now and in the future, his lost past and future business, and reputational injury in the amount of $15,000,000.00;
2. Punitive damages in an equal amount so as to punish Respondent for its deliberately damaging actions and claims and to deter it and others from repeating this form of behavior in the future;
3. Order and recommend to FINRA that the U5 filing be expunged;
4. The Arbitration Award which of the Rule 2080 grounds for expungement serves as the basis for its expungement order be indicated;
5. A brief written explanation of the reasons for the Panel's finding that one or more Rule 2080 grounds for expungement applies to the facts of this case be provided; and
6. All forum fees be assessed against Respondent.

In the Statement of Answer, Respondent requested:

1. All of Claimant's claims and requests for damages and expungement be denied; and
2. All FINRA fees and costs be assessed against Claimant.

At the hearing, Claimant did not address forum fees related to expungement in the closing argument.

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondent is liable for and shall pay to Claimant the sum of $4,250,000.00 in compensatory damages.

2. Respondent is liable for and shall pay to Claimant interest on the above-stated sum at the rate of 10% per annum from the date of service of this Award through and including the date the entire Award is paid in full.

3. Respondent is liable for and shall pay to Claimant $800.00 to reimburse Claimant for the non-refundable portion of the filing fee previously paid to FINRA Dispute Resolution Services.

FINRA Dispute Resolution Services
Arbitration No.  24-02444
Award Page 3 of 5

4.  The Panel recommends the expungement of the Reason for Termination and Termination Explanation in Section 3 of Brent Ryan Bodner's (CRD Number 4187085) Form U5 filed by J.P. Morgan Securities LLC (CRD Number 79) on June 24, 2024 and maintained by the Central Registration Depository ("CRD"). The Reason for Termination shall be changed to "Voluntary" and the Termination Explanation should be deleted in its entirety and shall appear blank. This directive shall apply to all references to the Reason for Termination and Termination Explanation.

The Panel further recommends the expungement of the explanation for the "If amending the Reason for Termination and/or termination explanation" on the Amended Form U5 filed by J.P. Morgan Securities LLC on June 25, 2024 and maintained by the CRD. The response to this prompt should be deleted in its entirety and shall appear blank. This directive shall apply to all references to the "If amending the Reason for Termination and/or termination explanation" section.

The above recommendations are made with the understanding that the registration records are not automatically amended. Brent Ryan Bodner must obtain confirmation of this Award from a court of competent jurisdiction, before the CRD will execute the expungement directive, and must forward a copy of the Court Order to FINRA's Credentialing, Registration, Education and Disclosure Department for the amendments to be incorporated into the Registration Records.

5.  Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, are denied.

## FEES

Pursuant to the Code of Arbitration Procedure, the following fees are assessed:

**Filing Fees**
FINRA Dispute Resolution Services assessed a filing fee* for each claim:

| | |
|---|---|
| Initial Claim Filing Fee | =$    2,300.00 |

*The filing fee is made up of a non-refundable and a refundable portion.*

**Member Fees**
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the event giving rise to the dispute. Accordingly, as a party, Respondent is assessed the following:

| | |
|---|---|
| Member Surcharge | =$    4,325.00 |
| Member Process Fee | =$    7,300.00 |

**Postponement Fees**
Postponements granted during these proceedings for which fees were assessed or waived:

FINRA Dispute Resolution Services
Arbitration No.  24-02444
Award Page 4 of 5

September 29 – October 3, 2025, postponement requested by parties          =$      WAIVED

**Discovery-Related Motion Fees**
Fees apply for each decision rendered on a discovery-related motion.

Two (2) decisions on discovery-related motions on the papers          =$        400.00
with one (1) Arbitrator @ $200.00/decision

Claimant submitted Two (2) discovery-related motions

Total Discovery-Related Motion Fees          =$        400.00

The Panel has assessed $100.00 of the discovery-related motion fees to Claimant.

The Panel has assessed $300.00 of the discovery-related motion fees to Respondent.

**Hearing Session Fees and Assessments**
The Panel has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the Arbitrator(s), including a pre-hearing conference with the Arbitrator(s), which lasts four (4) hours or less. Fees associated with these proceedings are:

One (1) pre-hearing session with the Panel @ $1,575.00/session          =$      1,575.00
Pre-Hearing Conference:   March 11, 2025                   1 session

Twelve (12) hearing sessions @ $1,575.00/session          =$    18,900.00
| Hearings: | | |
|---|---|---|
| | March 30, 2026 | 2 sessions |
| | March 31, 2026 | 2 sessions |
| | April 1, 2026 | 2 sessions |
| | April 2, 2026 | 2 sessions |
| | April 3, 2026 | 2 sessions |
| | April 21, 2026 | 2 sessions |

Total Hearing Session Fees          =$    20,475.00

The Panel has assessed $787.50 of the hearing session fees to Claimant.

The Panel has assessed $19,687.50 of the hearing session fees to Respondent.

All balances are payable to FINRA Dispute Resolution Services and are due upon receipt.

FINRA Dispute Resolution Services
Arbitration No. 24-02444
Award Page 5 of 5

## ARBITRATION PANEL

| | | |
|---|---|---|
| Constance Ellen Boukidis | - | Public Arbitrator, Presiding Chairperson |
| Loreta Azarian | - | Public Arbitrator |
| Christopher L. Mass | - | Non-Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument, which is my award.

## Concurring Arbitrators' Signatures

*Constance Ellen Boukidis*
_____
Constance Ellen Boukidis
Public Arbitrator, Presiding Chairperson

**05/20/2026**
_____
Signature Date

*Loreta Azarian*
_____
Loreta Azarian
Public Arbitrator

**05/13/2026**
_____
Signature Date

*Christopher L. Mass*
_____
Christopher L. Mass
Non-Public Arbitrator

**05/11/2026**
_____
Signature Date

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

May 21, 2026
_____
Date of Service (For FINRA Dispute Resolution Services use only)