UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.P. MORGAN SECURITIES LLC,<br>Petitioner,<br>v.<br>BRENT RYAN BODNER,<br>Respondent. | Case No. 2:26-cv-06625-SB-AJR<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO VACATE ARBITRATION AWARD [DKT. NO. 16] |

Petitioner J.P. Morgan Securities LLC (JPMS) brings this action under the Federal Arbitration Act (FAA) to vacate an arbitration award issued by the Financial Industry Regulatory Authority (FINRA) in favor of Respondent Brent Bodner, a former employee of J.P. Morgan Chase Bank, N.A. (Chase). The arbitration panel awarded Bodner $4.25 million in compensatory damages and recommended expungement and amendment of his regulatory Form U5. The Court denies the motion to vacate the damages award, declines to confirm the expungement recommendation, and orders amendment of the Form U5 in accordance with the parties' agreement.

I.

Bodner worked for Chase as a wealth management advisor for almost 20 years before he was terminated in May 2024. Dkt. No. 16-1 at 3. His securities license was registered with JPMS, a FINRA member firm. *Id.* FINRA requires member firms to file a Form U5 whenever an individual leaves the firm, for any reason, and, when the individual was terminated, to identify and explain the reason for termination. *Id.* at 6. JPMS filed a Form U5 on June 24, 2024, indicating that Bodner had been "discharged" and explaining that he violated the firm's "Business Hospitality [P]olicy as it relates to the purpose and location of an event." Dkt. No.

17-2 at 16–17 of 29. An amended form was filed the next day to correct a typographical error. *Id.* at 7 of 29.

According to JPMS, Bodner violated the firm's Business Hospitality Policy when he used his corporate credit card to order $642.40 worth of food from a delicatessen for a personal Super Bowl party at his house and failed to disclose those circumstances on the expense approval form. Dkt. No. 16-1 at 4. Chase conducted an internal investigation and concluded that termination was proper. *Id.* at 6. According to Bodner, he hosted a permitted business hospitality event with his business partner, a client, and a prospective client and properly sought reimbursement. Dkt. No. 31 at 8. His assistant was responsible for ordering the food and preparing the expense approval form, *id.* at 9, and he contends that a policy against hosting events at an employee's home did not go into effect until one year after the event, *id.* at 10. Although he now works for Wells Fargo, he claims that his termination and the Form U5 damaged his reputation among his clients and cost him business. *Id.* at 13.

In November 2024, Bodner filed a claim with a FINRA arbitration panel seeking damages and expungement of the Form U5 and alleging claims for defamation based on the explanation for his termination on the Form U5, wrongful termination, and tortious interference with business relations. Dkt. No. 17-1 at 2–3 of 13. The panel held hearings between March 30 and April 21, 2026, during which both parties presented witness testimony and exhibits. Dkt. No. 17 ¶¶ 6–12; Dkt. Nos. 17-4–17-15. On May 21, the arbitrators issued an award finding JPMS liable for $4.25 million in compensatory damages, plus ten percent interest until the award was paid in full and reimbursement of the $800 nonrefundable filing fee. Dkt. No. 17-16 at 3 of 6. The arbitrators also recommended that JPMS's original and corrected Forms U5 be expunged and amended to state that the reason for termination was "voluntary" and that the explanation for termination be left blank. *Id.* at 4 of 6. The award denied Bodner's request for punitive damages. *Id.*

In June 2026, JPMS filed a petition to vacate the arbitration award, Dkt. No. 1, and subsequently filed the present motion to vacate. Dkt. No. 16.

II.

The FAA provides for "extremely limited" judicial review of arbitration awards, sufficient "to preserve due process," while allowing disputes to be resolved through a more informal, flexible, and expeditious process. *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998, 1000 (9th Cir.

2003) (en banc). That narrow scope of review is reflected in the FAA's four enumerated grounds for vacatur: an award may be vacated only when the award was procured by "corruption, fraud, or undue means," there was evident partiality or corruption in the arbitrators, the arbitrators engaged in prejudicial misconduct, or the arbitrators "exceeded their powers." 9 U.S.C. § 10(a).

Arbitrators act in excess of authority when they demonstrate a manifest disregard of the law. *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009). Not only must the governing law be "well defined, explicit, and clearly applicable," but "it [also] must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879–80 (9th Cir. 2007) (cleaned up). Neither erroneous legal conclusions nor unsupported factual findings alone suffice:

> The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4).

*Kyocera*, 341 F.3d at 1002–03; *see also VIP Mortgage Inc. v. Gates*, 162 F.4th 1010, 1015–16 (9th Cir. 2025) (affirming denial of vacatur notwithstanding a legally dispositive factual error because the record did not show that the arbitrator was aware of the dispositive fact and intentionally ignored it).

In other words, manifest disregard of the law is not the same as manifest legal error. The distinction is between getting the law wrong—even by committing "serious error"—and deliberately deciding to disregard controlling law. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010). Misinterpreting, misapplying, or failing to understand clearly applicable law generally falls on the unreviewable side of that line. *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 668 n.7 (9th Cir. 2012). And where the arbitrators provide no reasons, establishing manifest disregard is "all but impossible." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (cleaned up).

III.

Applying this highly deferential standard, JPMS has not carried its burden to vacate the $4.25 million award. The arbitration panel gave no reasons for its decision, so the Court does not know which claim it accepted or how it evaluated

the evidence. But that uncertainty cuts against vacatur, not in favor of it. The Court does not ask whether the panel correctly applied the law or whether this Court would have reached the same result. Rather, an unexplained award is presumed to rest on a permissible route where one exists. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992). And the presumption is not overcome by showing legal or factual error unless the record shows that the arbitrators recognized controlling law and deliberately disregarded it. *Bosack*, 586 F.3d at 1104. The record here permits the award to be understood as resting on Bodner's tortious-interference claim without requiring the conclusion that the panel deliberately disregarded controlling law.

A.

A claim for tortious interference requires, among other things, a business relationship with a third party and wrongful interference with that relationship. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (New York law); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158–59 (2003) (California law).[1]

JPMS argues that Bodner could not establish the required business relationship because Chase owned the client accounts and Bodner did not intend to leave Chase before his termination. Dkt. No. 16-1 at 13–15. But the arbitration record contained evidence from which the panel could have viewed Bodner's relationships with his clients as economically significant notwithstanding Chase's ownership of the accounts. Bodner testified that he had built and serviced a book approaching $1 billion over many years; his expert testified that an advisor producing that level of revenue ordinarily would have close relationships with his clients; and some clients followed Bodner to Wells Fargo after his termination. Dkt. No. 17-10 at 56–57, 159–61 of 237; Dkt. No. 17-11 at 36 of 268; Dkt. No. 17-14 at 228–29 of 251. Whether those facts were legally sufficient to establish the required business relationship is not a question the Court may resolve anew. The relevant point is that the record does not show that the panel understood controlling law to preclude liability on this ground and deliberately disregarded it.

The same is true of wrongful conduct. Under New York law, interference motivated by economic self-interest generally must involve wrongful means, *see*

[1] The parties dispute whether New York or California law applies. That dispute is not material given the similarity of the law in the two states and the standard for vacating an arbitration award.

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190–92 (2004), while under California law, interference generally must involve an independently wrongful act, *Korea Supply*, 29 Cal. 4th at 1158–59. At the arbitration hearing, JPMS argued that its efforts to retain its own clients were lawful and could not support tortious-interference liability. Bodner, however, presented a different theory: that after his abrupt termination, JPMS representatives contacted his clients and conveyed a false impression that he had engaged in serious professional misconduct, thereby impairing his relationships with them. Dkt. No. 17-1 at 5–6 of 13; Dkt. No. 17-11 at 31–32 of 268. The panel could have concluded that such communications amounted to defamation. Defamation can constitute the predicate wrongful conduct for such a tortious-interference claim. *See Stapleton Studios, LLC v. City of New York,* 26 A.D.3d 236, 237 (2006)*; Redfearn v. Trader Joe's Co.,* 20 Cal. App. 5th 989, 1007–08 (2018).

The Court need not decide whether Bodner's theory was legally or factually correct. Even if the panel misapplied tortious-interference or defamation law in accepting it, that would not by itself permit vacatur. What matters is that the unexplained award can be understood as resting on that theory without the record showing that the panel recognized controlling law as foreclosing liability and deliberately disregarded it. JPMS therefore has not established manifest disregard merely by identifying legal or factual reasons why the panel might have rejected Bodner's claim. *See U.S. Life Ins. Co. v. Super. Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) ("The burden of establishing grounds for vacating an arbitration award is on the party seeking it.").

B.

JPMS separately argues that the $4.25 million award lacked record support. Dkt. No. 16-1 at 16.

Bodner sought substantial compensatory damages and presented expert testimony offering several measures of economic loss, including calculations exceeding the $4.25 million ultimately awarded. Dkt. No. 17-13 at 5–35 of 235. JPMS disputed those calculations and argued that Bodner suffered no compensable loss because he earned more at Wells Fargo after Chase had terminated him. Dkt. No. 17-15 at 77 of 127.

The panel did not explain how it arrived at $4.25 million or adopt any particular damages calculation. But the FAA did not require it to do so. Even if the award may not reflect the measure of damages a court would apply, such

disagreement with the panel's evaluation of the evidence or application of the proper measure of damages does not establish that it deliberately disregarded controlling law. *See Barnes v. Logan*, 122 F.3d 820, 825 (9th Cir. 1997) (characterizing challenge as "merely a dispute over the assessment of the evidence" to which the court "must defer").

Accordingly, JPMS has not established that the $4.25 million award reflects manifest disregard of controlling law or is completely irrational. The motion to vacate that portion of the award is denied.[2]

IV.

JPMS also seeks to vacate the panel's recommendation that Bodner's Form U5 be amended to change the reason for termination from "Discharged" to "Voluntary" and delete the termination explanation. Dkt. No. 16-1 at 17; Dkt. No. 17-16 at 4 of 6. The parties have since agreed to a more accurate description. In light of that agreement, the Court declines to confirm the expungement recommendation and orders the Form U5 be amended to state that the reason for

[2] JPMS alternatively argues that due process requires heightened review because FINRA arbitration is government-compelled and, in its view, an exercise of delegated executive power. Dkt. No. 16-1 at 18–21. JPMS contends that federal law effectively requires broker-dealers to join FINRA, whose rules compel arbitration of covered disputes, and that FINRA exercises regulatory authority delegated through the SEC. *Id.* It therefore argues that meaningful Article III review is constitutionally required and § 10(a)(4) should permit substantial-evidence review. *Id.* JPMS relies on *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, 430 U.S. 442 (1977), and *SEC v. Jarkesy*, 603 U.S. 109 (2024), but those cases address constitutional limits on administrative adjudication. *See Atlas Roofing*, 430 U.S. at 461 (upholding agency adjudication of certain public-rights disputes); *Jarkesy*, 603 U.S. at 120–21 (requiring a jury trial when the SEC seeks civil penalties for securities fraud). Neither addressed private arbitration or held that FINRA arbitration constitutes executive-branch adjudication requiring substantial-evidence review. And JPMS identifies no authority holding that compulsory FINRA arbitration or FINRA's regulatory role expands the FAA's limited grounds for vacatur. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008). The Court therefore declines to apply heightened review.

termination was "Separated on May 29, 2024," with the termination explanation left blank.

V.

"Federal courts rarely vacate arbitration awards." *VIP Mortg.*, 162 F.4th at 1013. This is not one of those rare occasions. Although JPMS has raised serious challenges to the arbitration award, the Court is not able to conclude on this record that the panel—even if it committed legal or factual error—recognized controlling law as prohibiting the relief awarded and deliberately disregarded it. JPMS therefore has not established that the panel exceeded its powers under § 10(a)(4). The motion to vacate the award is therefore denied. In light of the parties' agreement, the Court declines to confirm the panel's expungement recommendation and orders the Form U5 amended to reflect the agreed-upon language.

Date: September 21, 2026

Stanley Blumenfeld, Jr.
United States District Judge